Ronald **PETERSON, Barry Thune, David Morken, Owen Larson, Duane Evenson, Jeffrey Nesvig, Richard Moen, Christopher Grove, David Abentroth, Glenn Asbeck, Harold Schlothauer, Donald Steinbeisser, Stephen Pust, and David L. Pinkert, individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**BASF CORPORATION, a foreign corporation, Defendant.**

Civ. No. 98–47 (JRT/RLE).

United States District Court,
D. Minnesota.

June 30, 1998.

Douglas J. Nill, Nill Law Office, Minneapolis, MN, Hugh V. Plunkett, Robert Kinney Shelquist, Bruce L. McLellan, Plunkett, Schwartz, Peterson, Minneapolis, MN, for Plaintiffs.

Winthrop A. Rockwell, John P. Mandler, Mark J. Carpenter, Faegre & Benson, Minneapolis, MN, for Defendant.

## ORDER

TUNHEIM, District Judge.

The above-entitled matter comes before the Court upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, dated June 8, 1998. No objections have been filed to the Report and Recommendation in the time period permitted.

Based upon the Report and Recommendation of the Magistrate Judge, and all of the files, records and proceedings herein,

IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Remand this matter to the Minnesota District Court for Norman County [Docket No. 13] is granted, and the Clerk of Court is directed to do so forthwith.

2. Defendant's Motion to Dismiss [Docket No. 6] is denied, as moot.

## ORDER and REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the Plaintiffs' Motion to Remand this matter to the Minnesota District Court for Norman County, and upon the Defendant's Motions to Dismiss and to Bifurcate and Delay Discovery.

A Hearing on the Motions was conducted on May 19, 1998, at which time the Plaintiffs appeared by Robert K. Shelquist and Douglas J. Nill, Esqs., and the Defendant appeared by Winthrop A. Rockwell, John P. Mandler, and Mark J. Carpenter, Esqs.

For reasons which follow, we recommend that the Motion to Remand be granted[1] and, therefore, we recommend that the Defendant's Motion to Dismiss be denied, and we deny its Motion to Bifurcate and Delay Discovery, as being moot.[2]

### II. *Factual and Procedural Background*

The Plaintiffs in this putative class action are fourteen farmers, who reside in the States of Minnesota, North Dakota, South Dakota, and Montana. The Defendant BASF Corporation ("BASF") is incorporated under the laws of Delaware, and is headquartered in New Jersey. Among BASF's various enterprises, it markets and sells herbicides in the national, agricultural market. Two of these herbicides, which are labeled a "Poast" and "Poast Plus," are sold for use in

[1]. Within this District, a Motion to Remand is considered to be nondispositive and, therefore, subject to disposition by a Magistrate Judge. See, *Blair v. Source One Mortg. Services Corp.*, 925 F.Supp. 617, 619 n. 1 (D.Minn.1996); *Banbury v. Omnitrition Intern., Inc.*, 818 F.Supp. 276, 279 (D.Minn.1993). Here, however, the District Court, the Honorable John R. Tunheim presiding, referred this matter to us for "proposed findings of fact and a recommendation for the disposition of the motion upon completion of a hearing." Accordingly, we express our disposition of this matter as a Recommendation to the District Court.

[2]. The Plaintiffs have also moved to Strike BASF's submissions of March 19, 1998, as not being compliant with the briefing schedule provided by our Local Rules. As we recommend that the Plaintiffs' Motion to Remand be granted, we also deny this Motion, as moot.

raising crops such as flax, beans, sugar beets, sunflowers, alfalfa, and potatoes.

On December 15, 1997, the Plaintiffs filed suit in Minnesota State Court, on behalf of themselves and a class of similarly situated farmers, claiming that BASF marketed Poast Plus in such a way as to lead purchasers to believe that it had not been registered with the EPA for use with minor crops, even though it had, in order to cause farmers to purchase the more expensive Poast for use on minor crops. *Amended Compl.* ¶ 29. The Plaintiffs claim that Poast Plus, which is the cheaper of the two herbicides, was conceived to help BASF compete in the more cutthroat major crop market. *Id.* ¶ 11. However, the Plaintiffs suggest that, because BASF retained dominance in the minor crop market, it schemed to prevent minor crop growers from purchasing the less expensive Poast Plus, by not informing them that Poast Plus was EPA-approved for their use. *Id.* The Plaintiffs claim that BASF violated the Minnesota Consumer Fraud Act, *Minnesota Statutes Section 325F.69;* the Minnesota Deceptive Trade Practices Act, *Minnesota Statutes Section 325D.44, et seq.;* the Minnesota False Advertising Statute, *Minnesota Statute Section 325F.67;* the New Jersey Consumer Fraud Act, *N.J.Rev.Stat. §§ 56:8–1, et seq.;* the Delaware Consumer Fraud and Deceptive Trade Practices Act, *Del.Code Title 6, §§ 2513 and 2532(a);* and that it had engaged in common law fraud and misrepresentation. The Plaintiffs request compensatory relief, including treble damages under the New Jersey Consumer Fraud Act, but they do not specify, in either their original or Amended Complaint, the amount of damages being requested.

On January 9, 1998, BASF removed the action to this Court, pursuant to Title 28 U.S.C. § 1441, on the basis of diversity jurisdiction. See, *Title 28 U.S.C. § 1332.* In support of its claim for an amount in controversy in excess of $75,000, BASF relies upon the claimed damages of Hector Farms, which is a member of the putative class of Plaintiffs, but which is not one of the named Plaintiffs in the Amended Complaint. Hector Farms, which is a farming partnership that is located in Hector, Minnesota, purchased 1,090 gallons of Poast, during the period from 1992 to 1996, from the Cenex Land–O–Lakes Agronomy. *Johnson Aff.* ¶ 2–3. A BASF officer, Bryan S. Wilson, attests that, during the period from 1992–1996, "the weighted average price differential between the two products * * * was approximately $4.00 per acre." *Wilson Aff.* ¶ 2. Therefore, BASF contends, as one gallon of Poast will cover eight acres of farmland, Hector Farms would have overpaid $34,880 during the period in question, see, *Def.'s Mem.* at 3–4, which, if trebled, would easily exceed the $75,000 jurisdictional threshold.

■ The Plaintiffs contend that, even if accepted as an appropriate basis for establishing the amount in controversy, the evidence relating to Hector Farms' purchases would not yield an overpayment of $34,880. Robert Burner, the General Manager of Farmers Union Oil in Climax, Minnesota, has explained that, while Poast covers eight acres per gallon, Poast Plus covers only 5.33 acres per gallon, which would lower Hector Farms' compensatory damages to $11,641.20. *Burner Aff.,* ¶ 4–6. BASF insists that Wilson accounted for the differing application rates of the two herbicides when he calculated the *weighted* average price differential of approximately $4.00 per acre, and that he has prepared a precise damage calculation. See, *Stipulation of BASF Corporation* ¶ 2, Ex. A.[3]

---

3. The Plaintiffs, in their Reply Memorandum in support of their Motion to Remand, offered to withdraw the Motion in exchange for BASF's stipulation that its calculation of compensatory damages would be the law of the case. See, *Pl.'s Reply Mem.* at 5 n. 2. BASF submitted the stipulation, as to Hector Farms' damages, which the Plaintiffs subsequently rejected. At the Hearing in this matter, BASF suggested that the Motion to Remand should be dismissed because of its acceptance of the Plaintiffs' offer to dismiss the Motion to Remand. As we stated at the Hearing, we are obligated to reject any stipulation between the parties, whether real or imagined, that proposes to confer Federal subject matter jurisdiction over this action. Even if, as BASF suggests, this stipulation should bind the Plaintiffs, "the parties by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III, § 2." *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 850, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); see also, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

Additionally, BASF has shown that, in a similar class action involving only North Dakota residents, a settlement was reached, in which approximately $738,000 was allocated to the class members, and the plaintiffs' attorneys recovered $1,250,000 in fees. *Meister Aff.* ¶ 4–5. BASF suggests that, if successful, these Plaintiffs and their attorneys would recover an amount of similar kind. In contrast, in moving to remand the case to Minnesota State Court, the Plaintiffs contend that BASF has not established the existence of diversity jurisdiction by a preponderance of the evidence.

### III. *Discussion*

■ A. *Standard of Review.* In pertinent part, the Statute which governs the removal of cases to Federal Courts, *Title 28 U.S.C. § 1441(a)*, states as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

After removal, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Title 28 U.S.C. § 1447(c)*. In reviewing a Motion to Remand, the District Court must resolve all doubts in favor of a remand to State Court, and the party opposing a remand bears the burden of establishing Federal jurisdiction. *In re Business Men's Assurance Co. of America*, 992 F.2d 181, 183 (8th Cir.1993); *Masepohl v. American Tobacco Co.*, 974 F.Supp. 1245, 1249 (D.Minn.1997).

■ Where, as here, all concede that complete diversity exists between the parties, our analysis necessarily focuses upon the amount in controversy threshold of $75,000. *Blair v. Source One Mortgage Servs. Corp.*, 925 F.Supp. 617, 622 (D.Minn.1996). Although the Eighth Circuit has left this precise point open, we believe that, where a complaint fails to specify the amount of damages claimed, the party opposing remand must prove the requisite amount in controversy by a preponderance of the evidence. See, *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993); *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir.1993); *Commercial Coverage, Inc. v. Paradigm Ins. Co.*, 998 F.Supp. 1088, 1091, (E.D.Mo.1998); *Gilmer v. Walt Disney Co.*, 915 F.Supp. 1001, 1007 (W.D.Ark.1996); *Bergstrom v. Burlington Northern R. Co.*, 895 F.Supp. 257, 258 (D.N.D.1995).

■ Both punitive damages and attorneys' fees are included in the calculation of the amount in controversy. *State of Missouri ex rel. Pemiscot County, Mo. v. Western Sur. Co.*, 51 F.3d 170, 173 (8th Cir.1995); *Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir.1992); *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir.1992). "When determining the amount in controversy, we scrutinize a claim for punitive damages more closely than a claim for actual damages to ensure that Congress's limits on diversity jurisdiction are properly observed." *State of Missouri ex rel. Pemiscot County, Mo. v. Western Sur. Co.*, supra at 173, citing *Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir. 1994). Given the conjectural nature of the prospective measurement of attorneys' fees that would be awarded under State law, the Court's obligation to resolve all doubts in favor of remand necessitates that enhanced jurisdictional scrutiny be applied to claims for attorneys' fees.

B. *Legal Analysis.* For these purposes, we assume that BASF has established, by a preponderance of the evidence, that Hector Farms' claimed compensatory damages would be $34,880. We find, nonetheless, that BASF is unable to establish that the amount in controversy, which is necessary for diversity jurisdiction to be invoked, has been satisfied.

1. *Supplemental Jurisdiction Based upon the Satisfaction of the Amount in Controversy by an Unnamed Class Member.*

■ As noted, one unnamed member of the putative class—Hector Farms—would satisfy the $75,000 threshold if it were to receive an award of treble damages, as is requested in Count IV of the Plaintiffs' Amended Complaint. Therefore, BASF urges, supplemental jurisdiction may be ex-

ercised over all of the members of the class, pursuant to Title 28 U.S.C. § 1367.

Under long established Supreme Court precedent, in a class action setting, each Plaintiff must satisfy the amount in controversy threshold, as no aggregation of claimed damages among the parties-Plaintiff is permissible. See, *Zahn v. International Paper Co.*, 414 U.S. 291, 300, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 336, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). An exception to the non-aggregation rule has been recognized where "several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest." *Zahn v. International Paper Co.*, supra at 294, 94 S.Ct. 505. BASF argues that, in enacting Title 28 U.S.C. § 1367,[4] as part of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089 (1990), Congress abrogated the holding in *Zahn*, which requires each class member to individually satisfy the jurisdictional amount in controversy, and authorized the exercise of supplemental jurisdiction over class members who do not satisfy that requisite amount. According to BASF, the language of Section 1367(a) clearly encompasses diversity actions, and confers supplemental jurisdiction over related claims, including those by other plaintiffs. Section 1367(b) carves exceptions to the scope of supplemental jurisdiction, by reference to certain Rules of Federal Civil Procedure, but Rule 23, which governs class actions, is not among them. Therefore, BASF argues, the plain language of Section 1367 compels a holding that, if one class member satisfies the minimum amount in controversy, then supplemental jurisdiction may be exercised over the claims of those class members who, individu-

ally, do not satisfy the requisite amount in controversy, notwithstanding the Supreme Court's holding in *Zahn*. This issue is by no means settled, and our independent search reveals that the issue remain subject to much dispute.

In this District, the District Court, the Honorable Richard H. Kyle presiding, closely analyzes the effect of Section 1367 upon the Court's holding in *Zahn*, and acknowledged the split of authority on the issue. See, *In re Potash Antitrust Litigation*, 866 F.Supp. 406 (D.Minn.1994). The Court surveyed the holdings of District Courts on both sides of the question, found the majority to support *Zahn*'s survival, and concluded as follows:

> [A]t least as it regards diversity class actions, *Zahn* has retained its viability in the face of section 1367 * * *. The Court concurs with other available decisions in the class action context that "a close look at both the language of [§ 1367] and its legislative history teaches that the new provision does not change the old law at all."

*Id.* at 413 [alteration in original], quoting *Griffin v. Dana Point Condominium Ass'n*, 768 F.Supp. 1299, 1301 (N.D.Ill.1991) [other citations omitted].

BASF now posits that weight of the decisions, which uphold the continued vitality of *Zahn*, has been eroded, since the Court's analysis in *In re Potash*, by two Courts of Appeals' decisions which, relying upon Section 1367's plain language, have held to the contrary.

In *In re Abbott Laboratories*, 51 F.3d 524, 529 (5th Cir.1995), the Fifth Circuit held that, "under § 1367 a district court can exer-

---

**4.** The Statute provides, in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal Statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

*Title 28 U.S.C. § 1367.*

cise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement, as did the class representatives." The Court ruled that, despite a countervailing legislative history, the language of Section 1367 was clear and unambiguous in reflecting that class actions were not among the enumerated exceptions to the Congressionally delegated power of the Federal Courts to generally hear supplemental claims. *Id.* at 528. Notably, the Seventh Circuit, and one District Court within this Circuit, have followed suit, and have held that the absence of Rule 23, from the listed exceptions to supplemental jurisdiction over claims forming the same "case or controversy," unambiguously provides for supplemental jurisdiction over the claims of class members whose damages fall below the jurisdictional hurdle. See, *In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 607 (7th Cir.1997)(if one named plaintiff satisfies the jurisdictional minimum, other named plaintiffs and unnamed class members can "piggyback" on that plaintiff's claim, by virtue of Section 1367), cert. denied, *sub nom., Abbott Labs. v. Huggins,* —— U.S. ——, 118 S.Ct. 1178, 140 L.Ed.2d 186 (1998); *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 931 (7th Cir. 1996); *Gilmer v. Walt Disney Co.,* supra at 1009.

■ Since BASF urges us to reject the interpretation of the Statute that is offered by a Court of this District, in favor of those of the Fifth and Seventh Circuits, the doctrine of *stare decisis* is implicated. The principle carries less weight here, for "a considerable degree of flexibility exists in the application of the doctrine * * * to prior decisions of the district court before which a case is pending." *Johns v. Redeker,* 406 F.2d 878, 882 (8th Cir.1969). However, "[t]he general policy is not to lightly overrule a prior decision of the court," but "an obvious error need not be perpetuated by strict adherence to a court's earlier decisions." *Id.* We add that the doctrine of *stare decisis,* when applied to a prior ruling, on an identical question of law, by a coordinate Court in the same District, serves the considerable interests of consistency, and predictability of result.

With that in mind, we have independently reexamined the import of Title 28 U.S.C. § 1367 upon the viability of *Zahn*'s requirement, that each class member must meet the jurisdictional threshold, and we have reconsidered the soundness of the *Potash* decision. In *Potash,* the Court determined, as have other Courts, that Congress did not intend the Judicial Improvement Act of 1990 to overrule *Zahn. In re Potash Antitrust Litigation,* supra at 413 [citations omitted]. The Fifth Circuit, which has held that the *Zahn* has been legislatively overruled by the Act, agreed that, as evidenced by the relevant legislative history, Congress did not contemplate an abrogation of that aspect of *Zahn. In re Abbott Laboratories,* supra at 528. Nevertheless, however compelling the legislative history might be, it does not play a role in the construction of a statute in the absence of ambiguous language. See, *Chevron U.S.A. v. Natural Resources Def. Council,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); see also, *United States ex rel. Harlan v. Bacon,* 21 F.3d 209, 210 (8th Cir.1994). Where the statutory language is plain, the sole function of the Court is to enforce its terms. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The operative language of Section 1367(a) provides for "supplemental jurisdiction over all other *claims* that are so related to *claims in the action* * * * that they form the same case or controversy under Article III* of the United States Constitution." [emphasis added]. There can be no doubt that the class members' claims "form the same case or controversy." In *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court explained that claims form the same "case or controversy," within the meaning of Article III, if they derive from a common nucleus of operative fact. It is equally clear that class actions are not among the exceptions enumerated in Section 1367(b).

Section 1367(a), by its own terms, also makes exception for contrary provisions in other Federal statutes, which would necessarily include Title 28 U.S.C. § 1332. Of course, the rulings of *Zahn,* and *Snyder,*

supply the definitive interpretation of Section 1332, in the class action context, of which Congress was no doubt aware. As stated in *Zahn,* the meaning of the "matter in controversy" phrase means that "each plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount * * *." *Zahn v. International Paper Co.,* supra at 299, 94 S.Ct. 505; citing *Snyder v. Harris,* supra at 1053. Since Congress supplied an exception for contrary statutory provisions—Section 1332 among them—it is neither plain, nor unambiguous, as to whether Section 1367 abrogated that well-established interpretation of Section 1332, as it elected not to amend that statutory provision. See, *Borgeson v. Archer–Daniels Midland Co.,* 909 F.Supp. 709, 716 (C.D.Cal.1995). The law does not favor the repeal, by implication, of the well-understood meaning of Section 1332, unless the intent to do so is manifest. Cf., *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *Rodriguez v. United States,* 480 U.S. 522, 523, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987). Thus, as Section 1367(a), by its very terms, yields to contrary statutory provisions, it must be read *in pari materia* with Section 1332, as interpreted by *Zahn* and *Snyder.* Accordingly, we agree with the Court, in *Potash,* that the meaning of Section 1367 cannot be considered clear, at least as applied to diversity class actions. Indeed, " '[i]t is unlikely that so much scholarly effort would have been expended on the meaning and purpose of § 1367 if its meaning and purpose were clear.' " *In re Potash Antitrust Litigation,* supra at 414 n. 18, quoting *Leroy Cattle Co. v. Fina Oil & Chem. Co.,* 1994 WL 151105 *15 n. 10 (D.Kan., Mar.2, 1994).

Turning to the matter of legislative history, it appears clear that *Zahn* has retained its validity. Citing *Zahn,* the House Committee report noted that, "[t]his section is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to *Finley [v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) ]." H.R.Rep. No. 101–734, reprinted in 8 U.S.C.C.A.N. 6860, 6874–75 (1990). We do not believe that Congress' intent is in doubt on this issue and, therefore, we decline to hold that Section 1367 has legislatively overruled *Zahn.*

Even if we were to accede to the holdings of the Fifth and Seventh Circuits, BASF's suggestion that, where an unnamed member of a putative class meets the $75,000 threshold, supplemental jurisdiction extends over the named Plaintiffs who do not, goes far beyond the limits of the holdings in those Circuits. Those Courts have held that, "[a]t least one *named* plaintiff must satisfy the jurisdictional minimum." *In re Brand Name Prescription Drugs Antitrust Litigation,* supra at 607; see also, *In re Abbott Laboratories,* supra at 529 (where class representatives met jurisdictional amount, a Court can exercise supplemental jurisdiction over other class members). Hector Farms is not a class representative, it has not opted into the class, and the class has not been certified.

BASF rests this weak link in its supplemental jurisdiction argument on dictum from the Northern District of Florida. See, *Howard v. Globe Life Ins. Co.,* 973 F.Supp. 1412 (N.D.Fla.1996). There, following *In re Abbott Laboratories,* the Court determined that some of the named plaintiffs, in a class action, would meet the jurisdictional requirements, and the Court refused to remand the case. In an aside, the Court observed that, "[a]lthough not implicated in this case, it appears that the class member meeting the jurisdictional amount may not have to be named, as long as at least one identified member of the class meets the requirement." *Id.* at 1416 n. 5.

Other Courts have rejected this approach as an unauthorized expansion of Federal jurisdiction. "[E]ven those courts which have declined to apply Zahn in its strictest sense have required that the named plaintiff meet the jurisdictional amount." *Amundson & Associates Art Studio, Ltd. v. National Council on Compensation Insurance, Inc.,* 977 F.Supp. 1116, 1123 (D.Kan.1997), quoting *Bishop v. General Motors Corp.,* 925 F.Supp. 294, 299 (D.N.J.1996) [alteration in original]. The reason why unnamed class members should not provide the basis of supplemental jurisdiction was best stated, we think, as follows:

[It] would eviscerate the fundamental rules of subject matter jurisdiction and could lead to absurd results. Federal courts are courts of limited jurisdiction and can adjudicate only those matters authorized by the Constitution or Congress. Defendants' proposed rule could lead to a finding of federal jurisdiction for an entire multi-party action where diversity only existed between two parties. It might allow a plaintiff who alone would be unable to be heard in federal court, to attain jurisdiction simply by labeling his complaint a class action. If Congress wishes to expand federal jurisdiction to include cases in which some members of a putative class, but not the class representatives, are diverse from defendants, they may so instruct. We will not tromp, however, where Congress hesitates to tread.

*Ren–Dan Farms, Inc. v. Monsanto Co.*, 952 F.Supp. 370, 376 (W.D.La.1997)(refusing to use "diverse" unnamed class members as a basis for supplemental jurisdiction over "non-diverse" named plaintiffs).

Therefore, even with an assumption that Hector Farms, if made part of the class, would have satisfied the jurisdictional threshold of $75,000, it cannot, as a matter of law, provide the mainspring for this Court's subject matter jurisdiction.

### 2. *Aggregation of Treble Damages and Attorneys' Fees.*

■ In this two-pronged argument, BASF suggests that the Court use its "common sense," in order to aggregate the "punitive" aspect of the class members' potential treble damage awards, as one "amount in controversy," and should aggregate the attorneys' fees, which could be awarded for the entire class, and attribute them only to the fourteen named Plaintiffs. See, *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995)(Court, in estimating unspecified amount in controversy need not have a "smoking gun," but should use its common sense). We cannot agree.

Although the Eighth Circuit has not reached the issue, we believe that the aggregation of punitive damages, or of attorneys'

fees, for jurisdictional purposes is contrary to long-settled non-aggregation principles which have been enunciated by the Supreme Court. The governing rule, for determining whether class members' claims are subject to aggregation, was stated in *Troy Bank of Troy, Inc. v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911), as follows:

When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

See also, *Shields v. Thomas*, 58 U.S. (17 How.) 3, 4–5, 15 L.Ed. 93 (1854)(considering claims collectively as "sum in controversy," where all "had a common and undivided interest in the claim").

The "paradigm cases," which allow claims to be aggregated, "are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy." *Bishop v. General Motors Corp.*, supra at 298. In other words, aggregation is permitted, when the adjudication of one claim implicates the rights of all other claimants. *Id.*

BASF relies primarily upon *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 n. 9 (11th Cir.1996), and *Allen v. R & H Oil & Gas Co.*, supra at 1333 (5th Cir.1995), which maintain that claims for punitive damages may be aggregated and attributed, in full, to each individual plaintiff for jurisdictional purposes.[5] In *Allen*, the Fifth Circuit purported to apply principles from *Snyder, Zahn*, and the historic "common fund" cases, and concluded that, under Mississippi law, punitive damages were "fundamentally collective," for each plaintiff had "an integrated right to the full amount" of any such award. *Allen v. R & H Oil & Gas Co.*, supra at 1333–34. Likewise, in *Tapscott*, the Eleventh Circuit followed *Allen* and aggregated punitive damages for jurisdictional purposes, based upon

---

**5.** BASF also cites *Gilmer v. Walt Disney Co.*, 915 F.Supp. 1001, 1014 (W.D.Ark.1996), which based

its decision upon the approach employed by the Fifth Circuit in *Allen*.

Alabama law, and held that the punitive damages were sought to vindicate "a single collective right in which the putative class has a common and undivided interest." *Tapscott v. MS Dealer Serv. Corp.*, supra at 1359.

Since those decisions, the Second Circuit has also considered the issue. It disagreed with the Fifth and Eleventh Circuits, and reasoned that, to "aggregate punitive damages even when the actual damages could not be aggregated, 'would eviscerate the holdings of Snyder and Zahn and would run counter to the strict construction of the amount-in-controversy requirement those cases mandate.'" *Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1431 (2nd Cir.1997), quoting *Visintine v. Saab Automobile A.B.*, 891 F.Supp. 496, 499 (E.D.Mo.1995); see also, *Anthony v. Security Pacific Fin. Servs.*, 75 F.3d 311, 315 (7th Cir.1996)(holding that plaintiffs would "have to recover on average at least $47,118.36 in punitive damages to satisfy 28 U.S.C. § 1332," thus impliedly rejecting *Allen*). Central to the Court's analysis was the reality that each class member could advance a separate punitive damages claim, in a separate lawsuit, without affecting the punitive claims of other class members. *Id.* at 1430, quoting *Hasek v. Chrysler Corp.*, 1996 WL 48602 *4 (N.D.Ill., Feb.5, 1996). We concur that this fact distinguishes, with a bright line, class members' claims for punitive damages from those "common fund" cases in which the plaintiffs' claims, for an undivided interest in a *res*, are inextricably joined.

Our rejection of BASF's argument need not rest on that ground alone, for BASF commends the aggregation of the exemplary portion of the Plaintiffs' treble damage claims under New Jersey law, a position that would extend *Tapscott* and *Allen* rulings far beyond their rationales, and would wholly sever their logic from the sound moorings of the historic "common fund" cases. As noted, *Tapscott* and *Allen* are based upon an examination of the State laws at issue, in order to determine whether that law considers punitive relief to create one right of recovery, without regard to a distribution among the plaintiffs. See, *Allen v. R & H Oil & Gas Co.*, supra at 1331; *Tapscott v. MS Dealer Serv. Corp.*, supra at 1358–59. Relying upon this authority, BASF emphasizes that treble damages, under the New Jersey Consumer Fraud Act, is considered to be a punitive remedy. See, *Pierzga v. Ohio Cas. Group of Ins. Companies*, 208 N.J.Super. 40, 504 A.2d 1200, 1203 (1986), certification denied, 104 N.J. 399, 517 A.2d 402 (1986).

BASF's wooden characterization of treble damages as punitive in nature, without reference to context, does nothing to inform us whether such damages are collective and, therefore, form a single right among the plaintiffs. Clearly, they do not. The statute at issue provides that, "[i]n any action under this section the court shall * * * award threefold the damages sustained by any person in interest." *N.J.Rev.Stat. § 56:8–19.* Unlike punitive damages, treble damages are not discretionary, are in unflagging proportion to the amount of actual damages sustained, and are awarded to the individual who sustained the actual damages. As such, treble damages are no more part of a "common and undivided interest" than are compensatory damages. See, *Borgeson v. Archer–Daniels Midland Co.*, supra at— (distinguishing *Allen* with respect to claim for treble damages under California law); cf., *Ard v. Transcontinental Gas Pipe Line Corp.*, 138 F.3d 596, 602 (5th Cir.1998)(describing *Allen* as relying upon "peculiar nature" of punitive damages under Mississippi law, and declining to aggregate punitive claims under Louisiana law). Therefore, we decline to aggregate the exemplary portion of the potential class members' treble damage claims, as if they constituted one collective interest to be attributed to each Plaintiff.

Similarly, BASF has not persuaded us that attorneys' fees may be aggregated, in the named Plaintiffs, for jurisdictional purposes, nor has it provided any competent evidence as to the potential amount of any such attorneys' fees. As noted, this Circuit measures a plaintiff's ability to meet the jurisdictional threshold by taking into account the requested attorneys' fees. See, *Capitol Indemnity Co. v. Miles*, supra at 438. Although this Circuit has not reached the issue, the majority view is that attorneys' fees may not be aggregated to satisfy the jurisdictional minimum, but should be consid-

ered on a *pro rata* basis. See, *In re Potash Antitrust Litigation*, supra at 414 n. 19 ("named plaintiffs in a diversity class action cannot satisfy the matter in controversy threshold in § 1332(a) by attributing potential attorney's fees to themselves."); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1366–67 (9th Cir.1982), cert. denied, 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982); *Quebe v. Ford Motor Co.*, 908 F.Supp. 446, 449 (W.D.Tex.1995); *Visintine v. Saab Auto, A.B.*, supra at 499; *Lailhengue v. Mobil Oil Co.*, 775 F.Supp. 908, 913 (E.D.La.1991); *National Organization for Women v. Mutual of Omaha Ins. Co.*, 612 F.Supp. 100, 109 (D.D.C.1985). A growing minority of Courts allow an exception to this rule when the law of the State attributes the entire sum of attorneys' fees to the named Plaintiffs. See, *In re Abbott Laboratories*, supra at 526–27; *Gilmer v. Walt Disney Co.*, supra at 1014; *Howard v. Globe Life Ins. Co.*, supra at 1420; *Ratliff v. Sears, Roebuck and Co.*, 911 F.Supp. 177, 179 (E.D.N.C.1995).

Under either line of authority, BASF's argument fails since the applicable Minnesota law does not suggest that attorneys' fees ought to be assigned only to class representatives. BASF points to no Minnesota statutory provision, or case authority, which makes such a designation, but suggests that tying the attorneys' fees to the named Plaintiffs would further the purposes behind Minnesota Statutes Section 8.31, Subdivision 3a, which has been held "to encourage lawyers to accept cases where nominal damages erect financial barriers to litigation." *Kronebusch v. MVBA Harvestore Sys.*, 488 N.W.2d 490, 495 (Minn.App.1992), rev. denied (Oct. 20, 1992). We find this argument to be deeply flawed. Whether aggregated, for jurisdictional purposes, to the named Plaintiffs, or attributed on a *pro rata* basis, the prevailing attorneys would still receive the same fee. Attribution of attorneys' fees to class representatives would not appear to provide an inducement to the class's attorney, much less one compelling enough to override the general rule against aggregation of attorneys' fees, at least for jurisdictional purposes. While, if the class were certified and successful, the total attorneys' fees in this case could, perhaps, exceed the jurisdictional threshold, there is no evidence that, when the fees are equally distributed among the claimants, they would be sufficient to satisfy the jurisdictional threshold.

Lastly, BASF has provided no competent evidence, much less a preponderance of the same, that, if aggregated in the fourteen named Plaintiffs, the attorneys' fees would satisfy the amount in controversy requirement. They, of course, point to a similar class action, in North Dakota, in which the attorneys' fees were stipulated to be $1,250,000. If split amongst the fourteen named Plaintiffs, the *pro rata* fee award would be $89,285.71. However, something more than anecdotal conjecture is necessary to remove the Court's doubt as to its subject matter jurisdiction.

In sum, while BASF's arguments in favor of Federal jurisdiction are creative, and not without some arguable support in the law, we are not persuaded that the authorities, which bind our analysis, support the invocation of Federal diversity jurisdiction, and we recommend that the Plaintiffs' Motion to Remand be granted

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendant's informal Motion to Bifurcate and Delay Discovery is DENIED, as moot.

2. That the Plaintiff's Motion to Strike the Defendant's Submissions of March 19, 1998 [Docket No. 21] is DENIED, as moot.

AND, It is—

RECOMMENDED:

1. That the Plaintiffs' Motion to Remand this matter to the Minnesota District Court for Norman County [Docket No. 13] be granted, and the Clerk of Court be directed to do so forthwith.

2. That the Defendant's Motion to Dismiss [Docket No. 6] be denied, as moot.

### NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon

all parties **by no later than June 25, 1998**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 25, 1998**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made. June 8, 1998.