Carrie A. JOHNSON, Plaintiff,

v.

**LASALLE BANK NATIONAL ASSOCIATION,**
Defendant.

**Civil No. 08–5127 (JRT/RLE).**

United States District Court,
D. Minnesota.

Sept. 30, 2009.

Carrie A. Johnson, Livingston, MT, plaintiff pro se.

Eldon J. Spencer, Jr., Leonard, O'brien, Spencer, Gayle & Sayre, Ltd., Minneapolis, MN, for defendant.

## ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

JOHN R. TUNHEIM, District Judge.

This case is before the Court on plaintiff Carrie Johnson's motion to remand after defendant LaSalle Bank National Association ("LaSalle") removed the case to federal court. In a Report and Recommendation filed on April 14, 2009, United States Magistrate Judge Raymond L. Erickson recommended that the Court grant Johnson's motion to remand. LaSalle and Johnson filed objections to the Report and Recommendation, which the Court reviews *de novo.* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2. For the reasons that follow, the Court overrules those objections and grants Johnson's motion to remand.

### BACKGROUND [1]

### I. FORECLOSURE OF JOHNSON'S PROPERTY

On March 26, 2004, Johnson and her husband executed a promissory note in

---

1. The Court recites the facts here only to the extent necessary to rule on the parties' objections. The Magistrate Judge's Report and Recommendation, (Docket No. 31 at 756–58) and the prior federal case, *Johnson v. EMC Mortgage Corp.,* No. 08–686, 2008 WL 2437434, at *1–2 (D.Minn. June 12, 2008), provide background.

connection with the purchase of a home. The note was secured by a mortgage on the property in favor of Aames Funding Corporation DBA Aames Home Loans ("Aames"). Aames later assigned the note and mortgage to another party, EMC Mortgage Corporation ("EMC"), and EMC subsequently sold the mortgage to Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, Series 2004–2 (the "Trust"). EMC, however, retained servicing responsibilities. Defendant LaSalle is the trustee for the Trust.

In October 2005, the Johnsons filed for bankruptcy protection and listed the promissory note as a secured debt. The note was discharged in the bankruptcy, but that discharge also forfeited the Johnsons' right to the property. EMC thereafter gave notice of its intent to foreclose the property, and in February 2007, EMC commenced foreclosure proceedings by advertisement. After EMC published notice of the foreclosure sale in the local newspaper for six consecutive weeks, LaSalle successfully bid on the property. *See* Minn.Stat. § 580.03 (stating that in a foreclosure by advertisement, "[s]ix weeks published notice shall be given that such mortgage will be foreclosed by sale of the mortgaged premises or some part thereof").

## II. THE DISTRICT COURT'S DECISION IN *JOHNSON I*

On February 15, 2008, Johnson, her husband, and a third individual filed an action in Minnesota state court against EMC, the Trust, and LaSalle. *Johnson v. EMC Mortgage Corp. (Johnson I)*, No. 08–686, 2008 WL 2437434, at *1 (D.Minn. June 12, 2008). The plaintiffs sought to quiet title to the foreclosed property and alleged, *inter alia,* violations of their constitutional rights and intentional infliction of emotional distress resulting from EMC's foreclosure action. *Id.* at *1–2. The defendants removed the case to the United States District Court for the District of Minneso-

ta and filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and a motion for summary judgment under Rule 12(d) and Rule 56.

██ The district court, however, raised *sua sponte* the issue of subject matter jurisdiction and dismissed the case with prejudice after holding that the *Rooker–Feldman* doctrine barred the exercise of federal subject matter jurisdiction over the case. Under that doctrine, federal courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings. *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The Supreme Court recently clarified *Rooker–Feldman's* limits, noting that the doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil,* 544 U.S. at 284, 125 S.Ct. 1517.

In *Johnson I,* the district court found that "[i]n February 2007, Defendant commenced a foreclosure action in state court to foreclose the mortgage on the Johnsons' home." *Johnson I,* 2008 WL 2437434, at *1. Based on that finding, the district court held:

The claims asserted by Plaintiffs in this case are barred by *Rooker–Feldman* because the Plaintiffs' suit is a *de facto* appeal of the state court foreclosure action. The nature of the relief requested is clear on the face of the Plaintiffs' Complaint, in that it seeks to quiet title to the property, a declaratory judgment

that the Plaintiffs own the property, a reconveyance of the property to them, and an injunction preventing Defendant from exercising the rights it obtained through foreclosing on the property in state court. The Plaintiffs could succeed in this suit only if this Court overturned the state court judgment, voided the mortgage, and restored Plaintiffs' rights in the property.

*Id.* at *3. As a result, the district court held that it was "barred entirely by *Rooker–Feldman* from granting this relief," and the court dismissed the case with prejudice. *Id.* at *3–4.

## III. JOHNSON'S SECOND ACTION

On August 13, 2008, Johnson filed the instant action in Minnesota state court alleging similar claims to those brought in *Johnson I*, but as the sole plaintiff. On September 8, 2008, LaSalle removed the case. Johnson filed a motion to remand, arguing that *Rooker–Feldman* bars federal subject matter jurisdiction over the case.

■ In a Report and Recommendation, the Magistrate Judge concluded that the district court erred in finding that *Rooker–Feldman* applied in *Johnson I* because the district court mistakenly found that the defendants foreclosed the Johnsons' property through a state court foreclosure action. (Report and Recommendation, Docket No. 31 at 761–63.) Indeed, it is undisputed that defendants foreclosed the property **by advertisement,** which is a non-judicial action. *See Norwest Bank Hastings Nat'l Ass'n v. Franzmeier,* 355 N.W.2d 431, 433 (Minn.Ct.App.1984) ("The Minnesota legislature has provided for two types of mortgage foreclosure proceedings: foreclosure by advertisement and foreclo-

sure by action. A foreclosure by advertisement takes place without recourse to the courts[.]"). As a consequence, the Magistrate Judge determined that *Rooker–Feldman* did not bar the Court's subject matter jurisdiction in this case or in *Johnson I* because Johnson did not allege in her complaint any injury from a state court judgment. (Report and Recommendation, Docket No. 31 at 763.)

The Magistrate Judge then turned to a consideration of *Johnson I*'s preclusive effect on the claims and issues in the present case. First, the Magistrate Judge looked to Federal Rule of Civil Procedure 41(b), which states that "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction . . .—operates as an adjudication on the merits." Based on that Rule, the Magistrate Judge concluded that *Johnson I* did not operate as an adjudication on the merits of the plaintiffs' claims and *res judicata* accordingly did not bar the instant claims.[2] (Report and Recommendation, Docket No. 31 at 767.). The Magistrate Judge concluded, however, that the district court's holding in *Johnson I* precluded the parties' re-litigation of subject matter jurisdiction in this case. (*Id.*) As a result, the Magistrate Judge recommended that the Court grant Johnson's motion to remand for lack of subject matter jurisdiction.

LaSalle filed objections to the Report and Recommendation, arguing that the district court's dismissal with prejudice in *Johnson I* should be given determinative effect in the present case; that the district court's order in *Johnson I* should not pre-

---

2. To determine if *res judicata* bars litigation of a claim, the Court determines "(1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) **whether the judgment was a final judgment on the merits**[;]

and (3) whether the same cause of action and same parties or their privies were involved in both cases." *Gurley v. Hunt,* 287 F.3d 728, 731 (8th Cir.2002) (emphasis added).

clude resolution of the instant action in this Court; and, in the alternative, that principles of fairness favor permitting LaSalle to defend the action in federal court. (LaSalle's Objections, Docket No. 33 at 3–10.) Johnson also filed objections, seeking sanctions for LaSalle's "improper removal of the case." (Johnson's Objections, Docket No. 35 at 1.)

## DISCUSSION

### I. STANDARD OF REVIEW FOR MOTION TO REMAND

Following removal pursuant to 28 U.S.C. § 1441(a), a district court will remand an action to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "In reviewing a Motion to Remand, the District Court must resolve all doubts in favor of a remand to State Court, and the party opposing a remand bears the burden of establishing Federal jurisdiction." *Peterson v. BASF Corp.*, 12 F.Supp.2d 964, 968 (D.Minn.1998).

### II. LASALLE'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

As an initial matter, the Court notes that the procedural posture in *Johnson I* is different than the procedural posture in the present case. In *Johnson I*, the defendants moved to dismiss the case and, after concluding that it lacked subject matter jurisdiction under *Rooker–Feldman*, the court granted the defendants' motion and dismissed the case. Here, the Magistrate Judge determined that the parties are estopped from re-litigating the issue of *Rooker–Feldman* subject matter jurisdiction, notwithstanding the district court's mistaken factual finding. As a consequence, the Magistrate Judge recommended remanding the case for lack of subject matter jurisdiction. Indeed, *John-*

*son I* and the Magistrate Judge arrive at the same legal conclusion—that *Rooker–Feldman* bars subject matter jurisdiction over Johnson's case—albeit through different analyses and with different ultimate dispositions.

### A. There Were No "Alternative Bases" for Dismissal in *Johnson I*

The Magistrate Judge and LaSalle agree that *Johnson I*'s *Rooker–Feldman* holding was based on an erroneous finding of fact: that the defendants foreclosed Johnson's property in a state court action. Because the defendants foreclosed the property by advertisement, and not by state court action, *Rooker–Feldman* does not apply. *See Exxon Mobil*, 544 U.S. at 283, 125 S.Ct. 1517. The Magistrate Judge concluded, however, that the parties were collaterally estopped from re-litigating subject matter jurisdiction.

LaSalle argues that the Magistrate Judge erred in ignoring an "alternative" basis for *Johnson I*'s dismissal with prejudice. Specifically, LaSalle contends that *Johnson I*—in addition to holding that *Rooker–Feldman* barred federal subject matter jurisdiction—held that the three plaintiffs lacked standing because they lacked a justiciable interest in the property, providing a second reason that the court lacked subject matter jurisdiction. *See Faibisch v. University of Minn.*, 304 F.3d 797, 801 (8th Cir.2002) ("[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction."). According to LaSalle, *Johnson I*'s dismissal for lack of standing, which is a "quasi-jurisdictional" basis for dismissal, should be given determinative effect and the instant action should be dismissed with prejudice. *See McCarney v. Ford Motor Co.*, 657 F.2d 230, 233 (8th Cir.1981); *see also id.* ("[A] decision to dismiss based on any of the doctrines under the justiciability heading should preclude relitigation of the same

justiciability issue but not a second suit on the same claim even if arising out of the identical set of facts.").

LaSalle relies on one paragraph from *Johnson I,* in which the district court stated:

> Defendant filed its motion to dismiss under Rule 12(b)(6) and requested summary judgment under Rule 12(d) and Rule 56, rather than moving for dismissal under Rule 12(b)(1), which lists lack of subject-matter jurisdiction as a defense. Defendant, however, also argues that Plaintiffs lack standing. If a plaintiff lacks standing, the district court lacks subject-matter jurisdiction and, therefore, a standing argument implicates Rule 12(b)(1).

*Johnson I,* 2008 WL 2437434, at *4.

The Report and Recommendation cites the same excerpt, and concludes: "Although the District Court identified alternative bases for dismissal, its overall conclusion—that the Court lacked subject matter jurisdiction over *Johnson I*—remains unchanged, whether based upon standing, or the *Rooker/Feldman* doctrine." (Report and Recommendation, Docket No. 31 at 766.) The Court, however, disagrees that *Johnson I* offered **any** "alternative bases" for its decision.

After concluding its thorough analysis of *Rooker–Feldman's* effect on the plaintiffs' claims, *Johnson I* held, "This Court is barred entirely by *Rooker–Feldman* from granting this relief." *Johnson I,* 2008 WL 2437434, at *3. The court then proceeded with a discussion under a subheading entitled, "Basis for Dismissal." *Id.* In that discussion, excerpted above, the court considered the appropriate disposition of the case in light of the defendants' alternative motions for dismissal under Rule 12(b)(6) or for summary judgment under Rule 12(d) and Rule 56.[3] After noting the alternative requests, the court drew a parallel between its own conclusions under *Rooker–Feldman*—which it raised *sua sponte* and without oral argument or briefing from the parties—and the defendants' requested action, which did not include a Rule 12(b)(1) motion to dismiss. The district court first noted that the defendants argued that the plaintiffs lacked standing to bring their claims and then pointed out that standing is a necessary component of subject matter jurisdiction. *Johnson I,* 2008 WL 2437434, at *4 (citing *Faibisch,* 304 F.3d at 801). The court therefore concluded that the standing argument by implication was a request for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. *Id.*

The court went on to note that despite its consideration of materials outside of the pleadings, the court was not required to treat the motion as one for summary judgment. *Johnson I,* 2008 WL 2437434, at *4; *see Deuser v. Vecera,* 139 F.3d 1190, 1191 n. 3 (8th Cir.1998); *Osborn v. United States,* 918 F.2d 724, 728 n. 4, 730 (8th Cir.1990) ("The district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)."). The court concluded: "Rule 12(h)(3) states that 'if a court determines at any time it lacks subject-matter jurisdiction, the court must dismiss the action.' This Court, therefore, concludes dismissal with prejudice, rather than summary judgment, is the proper procedure by which to dispose of this

---

**3.** The court foreshadowed this issue in the background section of the opinion:

> Defendant moved to dismiss the Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failing to state a claim upon which relief may be granted. Defendant also presented affi-

davits, which it argues contain matters outside the pleadings, and requests that its motion be treated as one for summary judgment pursuant to Fed.R.Civ.P. 12(d) and Fed.R.Civ.P. 56.

*Johnson I,* 2008 WL 2437434, at *2.

case." *Johnson I*, 2008 WL 2437434, at *4 (quoting Fed.R.Civ.P. 12(h)(3)).

It is untenable to contend that in that passage of the opinion the district court was offering additional or alternative bases for its decision. Rather, the court was merely conveying its rationale for dismissing the case as opposed to granting summary judgment: the defendants had made a standing argument that was a component of a subject matter jurisdiction analysis, which would dictate dismissal. *Johnson I* then noted that although the court considered matters outside of the pleadings, such action is permissible under Rule 12(b)(1) and does not automatically convert the motion to dismiss into a motion for summary judgment. Finally, *Johnson I* pointed out that the Federal Rules of Civil Procedure mandate dismissal of a case when the court lacks subject matter jurisdiction. Moreover, the opinion in *Johnson I* does not even hint at a discussion of standing or the merits of defendants' argument that plaintiffs did not have a justiciable interest in the property, other than noting that the defendants had argued that the plaintiffs did not have standing. Under those circumstances, the Court simply cannot find that there was any basis for the dismissal in *Johnson I* other than the holding under *Rooker–Feldman*.

Accordingly, the court overrules La-Salle's objections to the extent that La-Salle contends that the Court should recognize or give preclusive effect to any "alternative bases" for the decision in *Johnson I*.

## B. LaSalle Had a Full and Fair Opportunity to Litigate the Issue

■ Based on *Johnson I*'s conclusion that the federal court did not have subject matter jurisdiction under *Rooker–Feldman*, the Magistrate Judge determined that the doctrine of collateral estoppel precluded re-litigation of the Court's subject matter jurisdiction in this case. Collateral estoppel, often referred to as issue preclusion, applies where:

> (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action.

*Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1018 (8th Cir.2002) (internal quotation marks omitted), *abrogation on other grounds recognized by Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 821–22 (8th Cir.2009). "Because the doctrine of collateral estoppel is not rigidly applied, the focus is on whether the application of collateral estoppel will work an injustice on the party against whom estoppel is urged." *Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979).

LaSalle does not object to the Magistrate Judge's conclusions that the Court and *Johnson I* address the same issue (subject matter jurisdiction under *Rooker–Feldman*) and that Johnson and LaSalle were both parties to the prior action. As to the second prong of the analysis, the Eighth Circuit has held that "[d]ismissal of a suit for lack of federal subject matter jurisdiction precludes relitigation of the same issue of subject matter jurisdiction in a second federal suit on the same claim." *Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Homestake Mining Co.*, 722 F.2d 1407, 1411 (8th Cir.1983); *see also Bui v. IBP, Inc.*, 205 F.Supp.2d 1181, 1188 (D.Kan.2002) (stating that "a judgment dismissing an action for lack of jurisdiction ordinarily has no preclusive effect on the cause of action originally raised," but concluding that the judgment will "have preclusive effect as to matters

actually adjudicated, including the precise issue of jurisdiction that led to the initial dismissal.").

■ LaSalle expressly objects to the Magistrate Judge's conclusion that it had a full and fair opportunity to be heard on the issue of subject matter jurisdiction. LaSalle concedes that it was aware that a federal court may *sua sponte* raise the issue of subject matter jurisdiction at any time, but LaSalle contends that it had a good faith basis for not challenging the Order in *Johnson I.* Specifically, LaSalle asserts that the "alternative basis" for the court's decision (i.e., the plaintiffs' lack of standing), which LaSalle argues was the basis for dismissal with prejudice, "would effectively preclude re-litigation of this matter by a party according respect to this aspect of the Court's determination." (La-Salle's Objections, Docket No. 33 at 9.) LaSalle also argues that it had no reason to challenge the holding because the Court's disposition—dismissal with prejudice—"gave [LaSalle] exactly what it sought." (*Id.*) The Court disagrees.

As discussed *supra, Johnson I* reached only the *Rooker–Feldman* issue. Further, LaSalle does not contend that it was unaware that *Johnson I* mistakenly found that the Johnsons' property was foreclosed by state action. LaSalle, however, argues that the **plaintiffs** were responsible for seeking amended findings of fact in *Johnson I.* According to LaSalle, if the plaintiffs had sought to amend the factual findings, LaSalle would have re-argued the merits of the plaintiffs' claims.

The Court is not persuaded by LaSalle's argument. Johnson is a *pro se* party navigating the nuances of federal court jurisdiction and, in particular, the application of *Rooker–Feldman.* LaSalle was aware of the mistaken finding of fact and failed to raise the issue to the district court through a motion to amend or alter the judgment. LaSalle should have recognized the effect

of that finding of fact on the court's decision, and LaSalle could have filed a motion to amend or alter the judgment. *See Bui,* 205 F.Supp.2d at 1185 ("After jurisdiction was found lacking, however, plaintiff had an opportunity to present facts by affidavit or otherwise in support of his jurisdictional contention through his motion to alter and amend....").

In sum, LaSalle was aware of the error in *Johnson I,* and decided for whatever reason not to seek amendment or alteration of that order. Accordingly, the Court finds that LaSalle had a full and fair opportunity to litigate the issue of subject matter jurisdiction under *Rooker–Feldman,* and the parties are precluded from re-litigating that issue now.

Giving preclusive effect to *Johnson I*'s determination under *Rooker–Feldman,* the Court concludes that it must remand this case for lack of subject matter jurisdiction. The Court further denies LaSalle's request for oral argument as moot.

### III. JOHNSON'S REQUEST FOR COSTS IS DENIED

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal." The 1988 commentary on the revisions to this provision explains the circumstances under which a court may require payment of costs and actual expenses related to "improper removal": "The matter is left to the court's discretion, to be exercised based on the nature of the removal and the nature of the remand." Cmt., 1988 Amendment to 28 U.S.C. § 1447(c).

■ Here, the Court finds that an award of costs and expenses is unwarranted. LaSalle had an arguable basis for federal jurisdiction when it removed the action to federal court, and the Court remands the case only after addressing the

nuanced legal questions raised by *Rooker–Feldman* and the doctrine of collateral estoppel. Those circumstances do not support an award of costs to Johnson and the Court therefore overrules Johnson's objections to the extent they request $8,000 for improper removal of the case.

Finally, the Court notes that Johnson has attempted to challenge the foreclosure of the mortgage on her property on questionable legal grounds and in the face of a United States Bankruptcy Court decision in February 2006, which concluded that EMC properly sought to enforce its mortgage on the property after the underlying debt was discharged in Johnson's bankruptcy. (Answer, Docket No. 6, Ex. A at 1.) The Court expects that a state court decision on the merits of Johnson's claims will be fairly swift, and likely favorable to LaSalle.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** defendant LaSalle Bank National Association's objections [Docket Nos. 32, 33] and plaintiff Carrie A. Johnson's objections [Docket No. 35] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated April 14, 2009, [Docket No. 31]. **IT IS HEREBY ORDERED** that:

1. Plaintiff Carrie A. Johnson's Motion to Remand [Docket No. 9] is **GRANTED** and this case is remanded.

2. Defendant LaSalle Bank National Association's Request for Oral Argument [Docket Nos. 32, 33] is **DENIED as moot.**

3. This matter is remanded to the State of Minnesota District Court, Seventh Judicial District, Clay County.

1. In *Johnson I,* the Plaintiff brought the same claims against the Defendant as she has in this action. See, *Johnson I, Docket No. 1.*

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

## REPORT AND RECOMMENDATION

RAYMOND L. ERICKSON, United States Chief Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Motion of the Plaintiff Carrie A. Johnson to Remand this matter to the Minnesota District Court for Clay County. See, *Docket No. 9.* A Hearing on the Motion was conducted on November 20, 2008, at which time, the Plaintiff appeared *pro se,* and the Defendant LaSalle Bank National Association appeared by Eldon J. Spencer, Jr., Esq. At the time of the Hearing, we requested additional briefing as to the preclusive effect, if any there be, of *Johnson v. LaSalle Bank National Association,* Civ. No. 08–686 (DWF/RLE)("*Johnson I* "),[1] 2008 WL 2437434 (D.Minn., June 12, 2008), and subsequently, we took the matter under advisement on December 8, 2008, when the final submission was received. For the reasons which follow, we recommend that the Plaintiff's Motion be granted.

### II. *Factual and Procedural History*

In this action, the Plaintiff filed suit in the Minnesota District Court for Clay County in order to quiet title to her foreclosed property, and she alleged violations of her Fifth, Seventh, and Fourteenth Amendment rights, as well as certain of her rights as may be secured by the Northwest Ordinance of 1787.[2] See, *Com-*

2. In addition, the Plaintiff alleges that the Defendant has no lawful claim to her property, that her property was patented, that the mortgage contract and note were fraudulent,

*plaint, Docket No. 1–2,* at pp. 10–15. In addition, the Plaintiff requests injunctive relief, and she asserts a claim for an intentional infliction of emotional distress. *Id.* at pp. 33–36. The Defendant subsequently removed this action to this Court, and filed certain Counterclaims. See, *Docket Nos. 1 & 2.* The facts may be briefly summarized.

On March 26, 2004, the Plaintiff and her husband, Brendon Johnson, executed a promissory note, and mortgage, in connection with the purchase of their home. See, *Answer, Docket No. 2,* at p. 10. The original payee/mortgagee was Aames Funding Corporation d/b/a Aames Home Loans ("Aames"). *Id.* On September 27, 2004, Aames assigned the note, and the mortgage, to EMC Mortgage Corporation ("EMC") which, in turn, sold the mortgage to Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, Series 2004–2 ("the Trust").[3] See, *Docket No. 1–5,* at pp. 5, 8; *Answer,* supra at p. 10.

On approximately October 14, 2005, the Johnsons filed for bankruptcy. See, *Answer,* supra at p. 10. In their bankruptcy filing, the Johnsons listed the note as a secured debt, but they failed to list any claims, or causes of action, as assets. See, *Answer,* supra at pp. 10–11; *Johnson I, Affidavit of Eldon Spencer, Jr. ("Spencer Aff."), Docket No. 7,* Exhibit A. In addition, in their bankruptcy, the Johnsons' schedules reported that they intended to retain the property conveyed with the mortgage. *Id.* However, the discharge of the underlying indebtedness on the property forfeited the Johnsons' rights in the property, other than their statutory right of redemption. *Id.*

After the Johnsons' bankruptcy, EMC gave notice of its intent to foreclose the Johnsons' property. See, *Answer,* supra at p. 11. On February 23, 2006, the Johnsons sought an Order to Show Cause, from the United States Bankruptcy Court for the District of Minnesota, which would require an explanation as to why the mortgage had not been discharged. *Id.* In response, EMC argued that it was not trying to collect on the underlying debt, but was simply enforcing the mortgage. See, *Answer,* supra at p. 11; *Johnson I, Affidavit of Lawrence Wilford ("Wilford Aff."), Docket No. 6,* Exhibit A at 2–5. The Court agreed with EMC, and denied the Johnsons' Motion. See, *Answer,* supra, Exhibit A at 1.

In February of 2007, EMC began foreclosure proceedings by advertisement. See, *Johnson I, Wilford Aff.,* supra, Exhibit B. For six (6) consecutive weeks, EMC published notice of the foreclosure sale in the *Hawley Herald* newspaper, which is located in Hawley, Minnesota. *Id.* At the foreclosure sale, the Defendant was the successful bidder, and the Johnsons' statutory right of redemption terminated on October 12, 2007. See, *Answer,* supra at p. 11; *Johnson I, Wilford Aff.,* supra, Exhibit B.

On February 15, 2008, the Johnsons and Harvey McClain, who is related to the Plaintiff, filed *Johnson I* against the Defendant, EMC, and the Trust, in the Minnesota District Court for Clay County. See, *Johnson I, Docket No. 1–2.* The Defendant, through EMC, subsequently removed *Johnson I* to this Court and, on June 12, 2008, the District Court, the Hon-

---

that the Defendant has not abided by the Fair Debt Collection Practices Act, and that the Defendant has not endured any financial loss. See, *Complaint, Docket No. 1–2,* at pp. 16–32.

**3.** EMC is the authorized agent for the Defendant, which is the trustee for the Trust. See,

*Johnson I, Affidavit of Eldon Spencer, Jr. ("Spencer Aff."), Docket No. 7,* at ¶ 2. The Defendant, and EMC, are parties to a Pooling and Servicing agreement, under which EMC is required to represent and protect the interests of the Trust. See, *Answer,* supra at p. 10; *Spencer Aff.,* supra at ¶ 2.

orable Donovan W. Frank presiding, dismissed *Johnson I* with prejudice for lack of subject matter jurisdiction, owing to the *Rooker/Feldman* doctrine. See, *Johnson I, Docket No. 18; Plaintiff's Memorandum in Support, Docket No. 10,* Exhibit B; see also, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Thereafter, on August 13, 2008, the Plaintiff filed this action in the Minnesota District Court for Clay County and, on September 8, 2008, the Defendant removed the action to this Court. See, *Docket No. 1.* The Plaintiff now moves to remand this matter to State Court. The Plaintiff relies upon the District Court's Order, in *Johnson I,* in arguing that we do not have subject matter jurisdiction over this action, because of the *Rooker/Feldman* doctrine. See, *Plaintiff's Memorandum in Support,* supra at 6–7.

For its part, the Defendant contends that the District Court erred in *Johnson I,* because of the Court's mistaken belief that the Defendant had initiated the Plaintiff's foreclosure through State Court proceedings, rather than by advertisement. See, *Defendant's Memorandum in Opposition, Docket No. 11,* at 5–13. As a result, the Defendant argues that the *Rooker/Feldman* doctrine does not bar this Court's jurisdiction, because there was no prior State Court Judgment. *Id.* In addition, the Defendant asserts that the District Court's Order, in *Johnson I,* does not preclude our jurisdiction in this action. See, *Defendant's Supplemental Memorandum, Docket No. 26,* at 2–5. Given this factual and procedural backdrop, we turn to the parties' arguments.

### Discussion

A. *The Plaintiff's Motion to Remand.*

In relevant part, Title 28 U.S.C. § 1441(a), which governs the removal of State Court matters to Federal Court, provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Following removal, a case will be remanded to State Court " '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction* * *.' " *Lundeen v. Canadian Pacific Railway Co.,* 342 F.Supp.2d 826, 828 (D.Minn.2004), quoting *Title 28 U.S.C. § 1447(c).* "In reviewing a Motion to Remand, the District Court must resolve all doubts in favor of a remand to State Court, and the party opposing a remand bears the burden of establishing Federal jurisdiction." *Peterson v. BASF Corporation,* 12 F.Supp.2d 964, 968 (D.Minn.1998), citing In re *Business Men's Assurance Co. of America,* 992 F.2d 181, 183 (8th Cir. 1993); *Masepohl v. American Tobacco Co.,* 974 F.Supp. 1245, 1249 (D.Minn.1997).

Here, the Plaintiff contends that the *Rooker/Feldman* doctrine prohibits this Court from exercising subject matter jurisdiction over the action.

B. *The Application of the Rooker/Feldman Doctrine.*

1. *Standard of Review.* Rule 12(h)(3), Federal Rules of Civil Procedure, requires that, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." "Subject matter jurisdiction * * * is a threshold requirement which must be assured in every federal case." *Turner v. Armontrout,* 922 F.2d 492, 493 (8th Cir.1991); see also,

*Riley v. United States,* 486 F.3d 1030, 1031–32 (8th Cir.2007); *Green Acres Enterprises, Inc. v. United States,* 418 F.3d 852, 856 (8th Cir.2005).

As established by the *Rooker/Feldman* doctrine, Federal Courts do not have subject matter jurisdiction over challenges to State Court decisions in judicial proceedings. See, *Rooker v. Fidelity Trust Co.,* supra at 416, 44 S.Ct. 149; *District of Columbia Court of Appeals v. Feldman,* supra at 476, 103 S.Ct. 1303; see also, *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 283–88, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *Lemonds v. St. Louis County,* 222 F.3d 488, 492 (8th Cir.2000), cert. denied, 531 U.S. 1183, 121 S.Ct. 1168, 148 L.Ed.2d 1026 (2001); *Bechtold v. City of Rosemount,* 104 F.3d 1062, 1065 (8th Cir.1997). The *Rooker/Feldman* doctrine provides that, except for Federal Habeas Corpus Petitions, "lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Mosby v. Ligon,* 418 F.3d 927, 931 (8th Cir.2005).

With minor exceptions, which do not apply here, the Federal review of a State Court determination may only be obtained in the United States Supreme Court. See, *District of Columbia Court of Appeals v. Feldman,* supra at 476, 103 S.Ct. 1303, citing *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995); see also, *Title 28 U.S.C. § 1257.* The Supreme Court, in *Feldman,* formulated a general rule which distinguishes general constitutional challenges to State laws and regulations—over which the Federal Courts have jurisdiction—from requests for review of specific State Court decisions, over which they have no jurisdiction. As explained by the Court, when the Federal claims are "inextricably intertwined with" State Court "decisions, in judicial proceedings," they fall outside of the Federal Court's jurisdiction. *District of Columbia Court of Appeals v. Feldman,* supra at 486–87, 103 S.Ct. 1303.

Under this test, a Federal Court lacks subject matter jurisdiction "if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Charchenko v. City of Stillwater,* supra at 983; see also, *Bechtold v. City of Rosemount,* supra at 1065. Stated otherwise, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)(Marshall, J., concurring).

Within this Circuit, even when a litigant has not had a fair opportunity to litigate a claim in the prior State Court proceeding, the *Rooker/Feldman* jurisdictional bar still applies, so long as the merits of the Federal action are "inextricably inter-twined" with the State Court decision. See, *In re Goetzman,* 91 F.3d 1173, 1178 (8th Cir.1996), cert. denied *sub nom., Goetzman v. Agribank, FCB,* 519 U.S. 1042, 117 S.Ct. 612, 136 L.Ed.2d 537 (1996); *Postma v. First Federal Savings & Loan,* 74 F.3d 160, 162 (8th Cir.1996); but see, *Centifanti v. Nix,* 865 F.2d 1422, 1433 (3rd Cir.1989)(failure to raise constitutional claims in State Supreme Court does not bar District Court from hearing those claims when plaintiff did not have "realistic opportunity to fully and fairly litigate" claims in State Court); *Raddatz v. Beaubien,* 880 F.Supp. 500, 503 (E.D.Mich. 1995)("[T]here is an exception to the *Rooker/Feldman* doctrine in cases where the state court judgment is alleged to have been procured through fraud, deception,

accident, or mistake."). As pertinent here, the *Rooker/Feldman* doctrine is applicable to claims requesting injunctive or declarative relief. See, *Keene Corp. v. Cass,* 908 F.2d 293, 296 (8th Cir.1990).

Concerned that lower Courts had construed the *Rooker/Feldman* doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases," the Supreme Court recently clarified that the *Rooker/Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* supra at 284, 125 S.Ct. 1517; see, *Lance v. Dennis,* 546 U.S. 459, 460, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006); *Dornheim v. Sholes,* 430 F.3d 919, 923 (8th Cir.2005), cert. denied, 547 U.S. 1135, 126 S.Ct. 2031, 164 L.Ed.2d 791 (2006). Under this framework, the *Rooker/Feldman* doctrine will only apply in those instances where "the federal suit is commenced after the state court proceedings have ended." *Dornheim v. Sholes,* supra at 923.

In reaching its holding, the Supreme Court, in *Exxon Mobil,* noted that the "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law," and that "[p]reclusion, of course, is not a jurisdictional matter." *Id.* at 293, 125 S.Ct. 1517. Accordingly, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party * * *, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.,* quoting, *GASH Associates v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir.1993); accord *Noel v. Hall,*

341 F.3d 1148, 1163–64 (9th Cir.2003). Since deciding *Exxon Mobil,* the Supreme Court has further reiterated that "*Rooker–Feldman* is not simply preclusion by another name," and "[i]ncorporation of preclusion principles into *Rooker–Feldman* risks turning that limited doctrine into a uniform **federal** rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Lance v. Dennis,* supra at 1202–03 [emphasis in original].

In the wake of the Supreme Court's decisions in *Exxon Mobil,* and *Lance,* several Circuit Courts of Appeals have reexamined their *Rooker/Feldman* jurisprudence. Those Courts have invariably determined that the doctrine is limited to situations where the plaintiff seeks redress for injuries that were caused by a State Court Judgment. See, *McCormick v. Braverman,* 451 F.3d 382, 392 (6th Cir. 2006), cert. denied, 552 U.S. 828, 128 S.Ct. 41, 169 L.Ed.2d 40 (2007); *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547 (3rd Cir.2006); *Bolden v. City of Topeka,* 441 F.3d 1129, 1145 (10th Cir.2006); *Davani v. Virginia Department of Transportation,* 434 F.3d 712, 718 (4th Cir.2006); *Hoblock v. Albany County Board of Elections,* 422 F.3d 77, 87 (2nd Cir.2005); *Galibois v. Fisher,* 174 Fed.Appx. 579, 579–81 (1st Cir.2006); see also, *Noel v. Hall,* supra at 1163; *Jensen v. Foley,* 295 F.3d 745, 747–48 (7th Cir.2002).

Indeed, the Court of Appeals for the Second Circuit has determined that the requirement set forth in *Exxon Mobil,* that "federal plaintiffs are not subject to the *Rooker–Feldman* bar unless they complain of an injury caused by a state judgment * * * is the core requirement from which others derive." *Hoblock v. Albany County Board of Elections,* supra at 87 [emphasis in original]. In reaching this conclusion, the Court explained, as follows:

First, this requirement explains why a federal plaintiff cannot escape the *Rooker–Feldman* bar simply by relying on a legal theory not raised in state court. Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for *Rooker–Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker–Feldman*, of the state-court judgment.

*Id.* at 87–88 [emphasis added].

Given these precepts, the "inextricably intertwined" language, which is set forth in *Feldman*, "does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state court loser seeks redress in the federal district court for the injury caused by the state court decision, his federal claim is, by definition, 'inextricably intertwined' with the state court decision, and is therefore outside of the jurisdiction of the federal district court." *Davani v. Virginia Department of Transportation,* supra at 719.

As recently explained by our own Court of Appeals:

A district court is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court * * * [citation to *Exxon Mobil* omitted.] Rather, *Rooker–Feldman* is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it.

*Skit Intern., Ltd. v. DAC Technologies of Arkansas, Inc.,* 487 F.3d 1154, 1157 (8th Cir.2007).

Based on the overwhelming weight of the authorities we have cited, we conclude that, under *Exxon Mobil,* the *Rooker/Feldman* doctrine only applies in those instances where the plaintiff seeks redress for an injury caused by the State Court decision itself.

▆▆▆▆ As a consequence, the *Rooker/Feldman* doctrine applies to "[a] claim seeking redress for an injury caused by the state court decision itself—even if the basis of the claim was not asserted to the state court," since such a claim "asks the federal district court to conduct an appellate review of the state court decision." *Fearing v. City of Lake St. Croix Beach,* 2006 WL 695548 at *4 (D.Minn., March 17, 2006). Moreover, "a federal suit complains

of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by the state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at \*5, quoting *Hoblock v. Albany County Board of Elections,* supra at 88.

2. *Legal Analysis.* In *Johnson I,* the District Court determined that it lacked subject matter jurisdiction, by application of the *Rooker/Feldman* doctrine, based upon a mistaken belief that the Defendant had initiated foreclosure proceedings in the Minnesota Court system. See, *Johnson I, Docket No. 18,* at 7, 2008 WL 2437434 at \*1. The Court explained that the Johnsons' claims were barred by the *Rooker/Feldman* doctrine "because [the Johnsons'] suit is a de facto appeal of the state court foreclosure action" and, as a result, the Court concluded that, since "[the Johnsons] could succeed in this suit only if this Court overturned the state court judgment," the claims were barred under *Rooker/Feldman.* See, *Johnson I, Docket No. 18,* at pp. 7–8, 2008 WL 2437434 at \*3. However, the Defendant actually foreclosed upon the Johnsons' property by advertisement, which is a non-judicial procedure.

As the Minnesota Court of Appeals explained, in *Norwest Bank Hastings Nat'l Ass'n v. Franzmeier,* 355 N.W.2d 431, 433 (Minn.App.1984):

The Minnesota legislature has provided for two types of mortgage foreclosure proceedings: foreclosure by advertisement and foreclosure by action. A foreclosure by advertisement takes place without recourse to the courts, and is a proceeding in pais, ex parte and in rem. Minn. Stat. ch. 580; *Morris v. Penn Mutual Life Insurance Co.,* 196 Minn. 403, 265 N.W. 278 (1936). A foreclosure by action requires a judicial decree and approval of sale and is an in personam proceeding, although it is in the nature of a proceeding in rem since its purpose is to enforce a lien on the mortgaged property. Minn.Stat. ch. 581; *Winne v. Lahart,* 155 Minn. 307, 193 N.W. 587 (1923).

Under Minnesota Statutes Section 580.03, a foreclosure by advertisement requires that "six weeks published notice \* \* \* be given that such mortgage will be foreclosed by sale of the mortgaged premises or some part thereof \* \* \*." *Minnesota Statutes Section 580.03.* The notice must specify the following:

(1) the name of the mortgagor, the mortgagee, each assignee of the mortgage, if any, and the original or maximum principal amount secured by the mortgage;

(2) the date of the mortgage, and when and where recorded, except where the mortgage is upon registered land, in which case the notice shall state that fact, and when and where registered;

(3) the amount claimed to be due on the mortgage on the date of the notice;

(4) a description of the mortgaged premises, conforming substantially to that contained in the mortgage;

(5) the time and place of sale;

(6) the time allowed by law for redemption by the mortgagor, the mortgagor's personal representatives or assigns; and

(7) if the party foreclosing the mortgage desires to preserve the right to reduce the redemption period under section 582.032 after the first publication of the notice, the notice must also state in capital letters: THE TIME ALLOWED BY LAW FOR REDEMPTION BY THE MORTGAGOR, THE MORTGAGOR'S PERSONAL REPRESENTATIVES OR ASSIGNS, MAY BE REDUCED TO FIVE WEEKS IF A JUDICIAL ORDER IS ENTERED UNDER MINNESOTA STATUTES, SECTION 582.032, DETERMINING, AMONG

OTHER THINGS, THAT THE MORT-GAGED PREMISES ARE IM-PROVED WITH A RESIDENTIAL DWELLING OF LESS THAN FIVE UNITS, ARE NOT PROPERTY USED IN AGRICULTURAL PRODUCTION, AND ARE ABANDONED.

*Minnesota Statutes Section 580.04.*

Foreclosure by advertisement also requires that, "at least four weeks before the appointed time of sale a copy of such notice shall be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises, if the same are actually occupied." *Minnesota Statutes Section 580.03.*

After the statutory notice has been provided, a public sale is made in the County in which the property is located. See, *Minnesota Statutes Section 580.06.* Minnesota Courts have consistently held that, even though a defaulting mortgagor is not entitled to a Hearing prior to the public sale, a foreclosure by advertisement satisfies the requirements of Due Process. See, *Sain v. Geske,* 2008 WL 2811166 at *13 (D.Minn., July 17, 2008)(finding that a mortgagor's Due Process rights are not violated if the statutory requirements of Minnesota Statutes Section 580.03 are met), citing *Guidarelli v. Lazaretti,* 305 Minn. 551, 233 N.W.2d 890, 892 (1975).

Here, the Plaintiff does not contend that the Defendant failed to fulfill the statutory requirements for foreclosure by advertise-ment, and indeed, the Record establishes that the Plaintiff received the required statutory notice. For six (6) consecutive weeks, the Defendant published notice of the foreclosure sale in the *Hawley Herald* newspaper, which included all of the details required by Minnesota Statutes Section 580.04. See, *Johnson I, Wilford Aff.,* supra, Exhibit B at 2. On March 13, 2007, four (4) weeks prior to the date of the expected sale, the Plaintiff was served with notice of the foreclosure sale. *Id.,* Exhibit B at 5–6. On April 12, 2007, the Plaintiff's home was subsequently sold, at auction, to the Defendant. *Id.,* Exhibit B at 7.

In the State Court portion of *Johnson I,* the Plaintiff never sought a State Court Judgment to prevent the foreclosure sale, or to challenge the non-judicial foreclosure by advertisement. As we have noted, the *Rooker/Feldman* doctrine "applies only to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Riehm v. Engelking,* 538 F.3d 952, 964 (8th Cir.2008), quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* supra at 284, 125 S.Ct. 1517. Accordingly, because the Plaintiff has not alleged any injury from a State Court Judgment, the *Rooker/Feldman* doctrine was inapplicable in *Johnson I,* is also inapplicable here, and therefore, does not bar our jurisdiction over this action.[4] Cf.,

---

**4.** The Defendant also asserts that the statutory foreclosure by advertisement is a form of administrative proceeding, which is not governed by the *Rooker/Feldman* doctrine unless the administrative decision is challenged in State Court. See, *Defendant's Memorandum in Opposition,* supra at 8–10.

    Our Court of Appeals has held that "[a] litigant may challenge in a federal district court action the constitutionality of an executive action, including a state administrative agency determination, even though he may not argue that a state court decision is unconstitutional." *Prince v. Arkansas Board of Examiners in Psychology,* 380 F.3d 337, 340–42 (8th Cir.2004), citing *Verizon Maryland, Inc. v. Public Serv. Comm'n,* 535 U.S. 635, 644 n. 3, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002); see also, *Narey v. Dean,* 32 F.3d 1521, 1525 (11th Cir.1994)("[T]he *Rooker/Feldman* doctrine, unlike that of res judicata, applies only to state court decisions, not to state administrative decisions."), appealed on other grounds, citing *Ivy Club v. Edwards,* 943 F.2d 270, 284 (3rd Cir.1991)(noting that *Rook-*

*Burgmeier v. Agribank FCB*, 1995 WL 15140 at *2 (Minn.App., January 17, 1995), rev. denied (Minn., March 14, 1995), cert. denied, 516 U.S. 819, 116 S.Ct. 77, 133 L.Ed.2d 36 (1995)(Because prior failed attempts to foreclose by advertisement occurred "without recourse to the courts," bringing another foreclosure by advertisement was not barred by collateral estoppel or res judicata).

However, given the dismissal with prejudice in *Johnson I*, which was not contested by the Defendant at that time, we turn to consider whether that Order precludes the parties from relitigating the issue of subject matter jurisdiction.

### C. *Res Judicata and Collateral Estoppel.*

1. *Standard of Review.* Since the District Court dismissed *Johnson I*, Federal res judicata principles govern our analysis here. See, *Heck v. Humphrey*, 512 U.S. 477, 488 n. 9, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir.2002)("[I]t is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum."), quoting *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir.1997); *Poe v. John Deere Co.*, 695 F.2d 1103, 1105 (8th Cir.1982). " 'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Gurley v. Hunt*, 287 F.3d 728, 731 (8th Cir.2002), quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

"The test applied to determine whether res judicata bars litigation of a claim is:

(1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits, and (3) whether the same cause of action and same parties or their privies were involved in both cases." *Id.*, citing *De Llano v. Berglund*, 183 F.3d 780, 781 (8th Cir.1999); see also, *Leonard v. Southwestern Bell Corp. Disability Income Plan*, 341 F.3d 696, 701 (8th Cir. 2003); *Canady v. Allstate Ins. Co.*, supra at 1014; *Black Clawson Co., Inc. v. Kroenert Corp.*, 245 F.3d 759, 762 (8th Cir. 2001); *Lundquist v. Rice Memorial Hosp.*, 238 F.3d 975, 977 (8th Cir.2001). "Final judgment on the merits precludes the relitigation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action," and a plaintiff cannot assert a claim on a theory of recovery when the same claim has already been rejected by a Court based upon another theory. *Poe v. John Deere Co.*, supra at 1105 (citing cases).

To determine if a plaintiff has stated distinct claims, we look to "whether or not proof of the same facts will support both actions, or to whether the wrong for which redress is sought is the same in both actions," and we examine the claims to see if they arise out of a common nucleus of operative facts. *Id.* at 1106, citing *Woodbury v. Porter*, 158 F.2d 194, 195 (8th Cir.1946); *United States v. Gurley*, 43 F.3d 1188, 1195 (8th Cir.1994), cert. denied, 516 U.S. 817, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995). In addition, we look to see " 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.' " *United States v.*

---

*er/Feldman* applies to "state court decisions, as opposed to state administrative decisions.")[citation omitted], cert. denied *sub. nom., Del Tufo v. Ivy Club*, 503 U.S. 914, 112

S.Ct. 1282, 117 L.Ed.2d 507 (1992). However, since the Plaintiff never challenged the foreclosure by advertisement in State Court, we do not address the argument further.

*Gurley,* supra at 1196, quoting *Lane v. Peterson,* 899 F.2d 737, 741 (8th Cir.1990).

We also apply Federal law to determine whether the doctrine of collateral estoppel applies. See, *Canady v. Allstate Ins. Co.,* supra at 1016; see also, *Jaramillo v. Burkhart,* 999 F.2d 1241, 1245 (8th Cir. 1993). "Collateral estoppel is appropriate when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action." *Id.,* citing *Wellons, Inc. v. T.E. Ibberson Co.,* 869 F.2d 1166, 1168 (8th Cir.1989).

"Because the doctrine of collateral estoppel is not rigidly applied, the focus is on whether the application of collateral estoppel will work an injustice on the party against whom estoppel is urged." *Oldham v. Pritchett,* 599 F.2d 274, 279 (8th Cir.1979)[citations omitted]; see also, *Jeffers v. Convoy,* 636 F.Supp. 1337, 1339 (D.Minn.1986)("Because the doctrine of collateral estoppel is flexibly applied, the focus is on whether its application would work an injustice on the party against whom estoppel is urged."), citing *Oldham v. Pritchett,* supra at 279, and *Tipler v. E.I. duPont deNemours and Co., Inc.,* 443 F.2d 125, 128 (6th Cir.1971).

Under Federal law, there is no requirement that both parties be bound by the prior Judgment, and a party may " 'rely on collateral estoppel even though he or she is not bound by the prior judgment if the party against whom it is used had a full and fair opportunity and incentive to litigate the issue in the prior action.' " *Banks v. International Union Electronic, Electrical, Technical, Salaried and Machine Workers,* 390 F.3d 1049, 1054 (8th Cir.2004), quoting *Lane v. Peterson,* supra at 741.

■ The Supreme Court has clarified that collateral estoppel can be used either offensively by a plaintiff, who is seeking to bar a defendant from litigating an issue that the defendant previously litigated against a different party, or defensively by a defendant, who seeks to prevent a plaintiff from asserting a claim that he has previously asserted, and lost, against another defendant. See, *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The defensive use of collateral estoppel, in particular, promotes judicial economy, as it "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.' " *Id.* at 330, citing *Bernhard v. Bank of Am. Nat. Trust & Savings Ass'n,* 19 Cal.2d 807, 122 P.2d 892, 895 (1942).

■ Moreover, Courts may raise res judicata and collateral estoppel sua *sponte* so as to avoid judicial waste. See, *Hanig v. City of Winner, S.D.,* 527 F.3d 674, 678 (8th Cir.2008)(finding that the District Court had "properly invoked res judicata to avoid 'unnecessary judicial waste[.]' "), quoting *Arizona v. California,* 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000), and citing *Bechtold v. City of Rosemount,* 104 F.3d 1062, 1068 (8th Cir.1997); *Transclean Corp. v. Jiffy Lube Intern., Inc.,* 474 F.3d 1298, 1308 (Fed.Cir.2007)("Although the general rule is that claim preclusion and issue preclusion must be pleaded, an exception exists where all relevant data and legal records are before the court and the demands of 'comity, continuity in the law, and essential justice' mandate invocation of preclusion principles."), cert. denied, 552 U.S. 825, 128 S.Ct. 186, 169 L.Ed.2d 36 (2007); *Scherer v. Equitable Life Assurance Society of United States,* 347 F.3d 394, 400 (2nd Cir.2003)(Courts may assert res judi-

cata *sua sponte* ) [citations omitted]; *Meador v. McFaddin,* 1999 WL 129938 at *1 (5th Cir.1999)(noting that a Court may raise collateral estoppel sua sponte)[citations omitted], cert. denied, 531 U.S. 835, 121 S.Ct. 94, 148 L.Ed.2d 53 (2000); *Doe v. Pfrommer,* 148 F.3d 73, 80 (2nd Cir.1998)(finding that District Court did not error in raising collateral estoppel sua sponte).

2. *Legal Analysis.* As a threshold matter, neither party raised the question of collateral estoppel in their submissions, but that does not preclude our analysis of the issue for, as noted, a Court may raise the doctrine of collateral estoppel, *sua sponte,* in order to conserve scarce judicial resources. For that precise reason, we raised the issue at the Hearing, and afforded the parties an opportunity to brief the question.

The question is whether the Defendant is collaterally estopped from relitigating the issue of subject matter jurisdiction, and the parties agree that the Defendant was a party to *Johnson I,* but the remaining elements of collateral estoppel are in dispute. First, the Defendant argues that the same issue, which is now in dispute, was not the same issue decided in *Johnson I,* because the District Court dismissed *Johnson I* on the basis of the *Rooker/Feldman* doctrine, as well as standing principles. See, *Defendant's Supplemental Memorandum,* supra at 4. We disagree.

In its Order, the District Court dismissed *Johnson I* on the basis of the *Rooker/Feldman* doctrine. See, *Johnson I, Docket No. 18,* at 7–8, 2008 WL 2437434 at *2. However, the District Court also observed as follows:

> Defendant filed its motion to dismiss under Rule 12(b)(6) and requested summary judgment under Rule 12(d) and Rule 56, rather than moving for dismissal under Rule 12(b)(1), which lists lack of subject matter jurisdiction as a defense.

Defendant, however, also argued that Plaintiffs lacks standing. If a plaintiff lacks standing, the district court lacks subject-matter jurisdiction and, therefore, a standing argument implicates Rule 12(b)(1). *Faibisch v. Univ. of Minn.* 304 F.3d 797, 801 (8th Cir.2002). See, *Johnson I, Docket No. 18,* at 8, 2008 WL 2437434 at *4.

■ Although the District Court identified alternative bases for dismissal, its overall conclusion—that the Court lacked subject matter jurisdiction over *Johnson I*—remains unchanged, whether based upon standing, or the *Rooker/Feldman* doctrine. See, *McCarney v. Ford Motor Company,* 657 F.2d 230, 233 (8th Cir.1981) (characterizing "the issue of standing as a part of the concept of justiciability," and noting that the "justiciability doctrine, for the purposes of claim preclusion, should be analyzed in the same way as subject matter jurisdiction."); *Media Technologies Licensing, LLC v. Upper Deck Co.,* 334 F.3d 1366, 1369–70 (Fed.Cir.2003)(noting that standing is jurisdictional); *Univ. of Pittsburgh v. Varian Medical Systems, Inc.,* 630 F.Supp.2d 576, 583 (W.D.Pa.2008)("However, whether deemed issue or claim preclusion, a dismissal for lack of subject matter jurisdiction does have a preclusive effect on subsequent litigation of that ground for dismissal, in this case lack of standing[.]"). Accordingly, both *Johnson I,* and this subsequent litigation, raise the same issue—the Court's subject matter jurisdiction.

Next, both parties contend that District Court's dismissal of *Johnson I* cannot be considered a final adjudication on the merits, because the Court dismissed the action on the basis of the *Rooker/Feldman* doctrine. We agree. As noted, the Court in *Johnson I* entered a dismissal with prejudice, after determining that the Court lacked subject matter jurisdiction due to

the *Rooker/Feldman* doctrine. However, Rule 41(b), Federal Rules of Civil Procedure, provides as follows:

> **(b) Involuntary Dismissal: Effect.** * * * Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction * * *—operates as an adjudication on the merits.

*Federal Rules of Civil Procedure 41(b)*; see also, *Ahmed v. United States*, 147 F.3d 791, 797 (8th Cir.1998)("Under Rule 41(b) of the Federal Rules of Civil Procedure, dismissal for lack of jurisdiction is not an adjudication on the merits * * *."), citing *Johnson v. Boyd–Richardson*, 650 F.2d 147, 148 (8th Cir.1981)("The Rule [41(b) ] also provides, however, that when a dismissal is for "lack of jurisdiction," the effect is not an adjudication on the merits, * * *."); *McCarney v. Ford Motor Co.,* supra at 234 ("Rule 41(b) provides that any dismissal operates as an adjudication upon the merits unless it is a dismissal for lack of jurisdiction, * * *.").

As a consequence, the Court's Order, in *Johnson I,* was not a Judgment on the merits with respect to the Plaintiff's claims, resultantly, res judicata does not apply here.

However, the Court's decision does collaterally estop the relitigation of the same underlying issue—subject matter jurisdiction. In *McCarney v. Ford Motor Co.,* supra at 232, and 234, the plaintiffs argued that res judicata and collateral estoppel did not bar their second action ("*McCarney II* "), even though their first action ("*McCarney I* ") had been dismissed for a lack of standing. The plaintiffs argued that res judicata and collateral estoppel were not applicable, because the decision in *McCarney I* was not on the merits. *Id.* at 231–32, 234. As we have noted, the Court first observed that issues of standing are part of the concept of justiciability,

and that a "dismissal based on any of these concepts, which are quasi-jurisdictional, does not preclude a second action on the same claim if the justiciability problem can be overcome." *Id.* at 233. [citation omitted]. However, the Court further explained that "a decision to dismiss based on any of the doctrines under the justiciability heading should preclude relitigation of the same justiciability issue but not a second suit on the same claim even if arising out of the identical set of facts." *Id.*

Accordingly, if the plaintiffs, there, had re-filed their suit under the same cause of action, or theories of relief, then their suit "would have clearly been precluded by their earlier suit which decided the standing issue." *Id.* at 233–34. However, "where the second suit presents new theories of relief, admittedly based upon the same operative facts as alleged in the first action, it is not precluded because the first decision was not on the merits of the substantive claim." *Id.* at 234. As a result, the Court concluded "that a dismissal based upon a lack of standing is not 'on the merits' of the underlying substantive claim and is not a bar to asserting another theory of relief based upon the same operative facts[.]" *Id.;* see also, *Kulinski v. Medtronic Bio–Medicus, Inc.,* 112 F.3d 368, 373 (8th Cir.1997)(finding that, since the plaintiff had brought his second action under State law, rather than the Employee Retirement Income Security Act ("ERISA"), his claim was not barred, even if the State law claim was based on the same operative facts as the original ERISA claim).

The *McCarney* Court also considered whether collateral estoppel barred the plaintiffs' claims. *Id.* at 234. Since the issues presented by the plaintiffs were not identical to the prior action, there was no final Judgment on the merits, and the

plaintiffs' had not received a full and fair opportunity to be heard on their new theories, the Court concluded that collateral estoppel did not bar the plaintiffs' claims. *Id.* at 234–35.

In *Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co.*, 722 F.2d 1407, 1411 (8th Cir.1984), the plaintiff relied upon the Court's decision in *McCarney* to argue that its first action ("*Oglala I* "), did not have res judicata or collateral estoppel effect on its second action ("*Oglala II* "), because *Oglala I* was dismissed for a lack of subject matter jurisdiction.[5] The *Oglala* Court disagreed and noted that "[r]es judicata * * * applies to questions of jurisdiction as well as to other issues." *Id.*, citing *Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Association*, 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982). The Court observed that the "[d]ismissal of a suit for lack of federal subject matter jurisdiction precludes relitigation of the same issue of subject matter jurisdiction in a second federal suit on the same claim." *Id.*, citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure § 4402*, at 11. The Court observed that, "[s]ince in the present action the [plaintiff is] asserting identical claims and jurisdic-

tional grounds as in *Oglala I*, this suit is barred." *Id.*

The Court also rejected the plaintiff's claim that, because *Oglala II* raised new theories, res judicata did not apply. *Id.* First, the Court underscored that a "dismissal based on lack of jurisdiction precludes a second action on the same claim unless 'the justiciability problem can be overcome.' " *Id.*, citing *McCarney v. Ford Motor Co.*, supra at 233. Accordingly, because the plaintiff's new theories, there, did not correct the jurisdictional problem, the court concluded that res judicata barred the plaintiff's claims. *Id.* at 1411–12. The Court further concluded that the plaintiffs' claims, there, were barred by collateral estoppel. *Id.* at 1413.

■ Other Courts have also concluded that a dismissal for a lack of subject matter jurisdiction has preclusive effects on later jurisdictional determinations. See, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment," and "[i]t has long been the rule that principles of res judicata apply to jurisdictional determina-

5. The Defendant argues that *Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. Homestake Mining Co.*, 722 F.2d 1407, 1411 (8th Cir.1984), is inapplicable, because *Oglala I* resulted in a "final judgment." See, *Defendant's Supplemental Memorandum*, supra at 2. We disagree.

In *Oglala I*, our Court of Appeals affirmed the District Court's dismissal of the plaintiff's action for lack of subject matter jurisdiction. See, *Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. United States*, 650 F.2d 140, 143 (8th Cir.1981). As noted by the Defendant, in *Oglala II*, the Court of Appeals observed that *Oglala I* "resulted in a final judgment that was affirmed by this Court[.]" See, *Oglala Sioux Tribe of the Pine Ridge*

*Indian Reservation v. Homestake Mining Co.*, supra at 1411. However, the Court continued its analysis by stating that "the Oglala Sioux contend, however, that *Oglala I*, as affirmed by this Court, dismissing the action for lack of jurisdiction, has no res judicata effect on their present claim[.]" *Id.* Given this observation, and notwithstanding the Defendant's arguments to the contrary, it is apparent that the final Judgment, which was referenced by the Court of Appeals, was the District Court's dismissal for lack of subject matter jurisdiction. Accordingly, we reject the Defendant's argument that *Oglala I* resulted in a final Judgment other than a dismissal for lack of subject matter jurisdiction.

tions—both subject matter and personal.")[citations omitted]; *North Georgia Elec. Membership Corp. v. City of Calhoun, Ga.,* 989 F.2d 429, 433 (11th Cir.1993)("Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims."); *Winslow v. Walters,* 815 F.2d 1114, 1116 (7th Cir. 1987)("A ruling granting a motion to dismiss for lack of subject matter jurisdiction is not on the merits; its res judicata effect is limited to the question of jurisdiction."); *Daigle v. Opelousas Health Care, Inc.,* 774 F.2d 1344, 1348 (5th Cir.1985)("A dismissal for want of jurisdiction bars access to federal courts and is res judicata only of the lack of a federal court's power to act."); *Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980); *Bui v. IBP, Inc.,* 205 F.Supp.2d 1181, 1188 (D.Kan.2002)(noting "that a judgment dismissing an action for lack of jurisdiction ordinarily has no preclusive effect on the cause of action originally raised," but instead, will "have preclusive effect as to matters actually adjudicated, including the precise issue of jurisdiction that led to the initial dismissal."), citing *Matosantos Commercial Corp. v. Applebee's Intern., Inc.,* 245 F.3d 1203, 1209 (10th Cir.2001). Therefore, while the Court's Order in *Johnson I* was not a final Judgment on the substance of the Plaintiffs' claims, there, it was a final Judgment on the question of subject matter jurisdiction.

Nevertheless, the Defendant contends that it did not have a full and fair opportunity to litigate, in *Johnson I,* the question of the Court's subject matter jurisdiction, or the applicability of the *Rooker/Feldman* doctrine, because the Court raised those issues *sua sponte.* See, *Defendant's Supplemental Memorandum, supra* at 3.

Again, we disagree, and again, where a Court believes that it lacks subject matter jurisdiction, the issue may be raised *sua sponte.* See, *Bilello v. Kum & Go, LLC,* 374 F.3d 656, 659 (8th Cir.2004)("However, when the record indicates jurisdiction may be lacking, we must consider the jurisdictional issue sua sponte."), citing *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.,* 357 F.3d 827, 828 (8th Cir. 2004), and *Thomas v. Basham,* 931 F.2d 521, 522–23 (8th Cir.1991); *Johnson v. City of Shorewood, Minnesota,* 360 F.3d 810, 818 (8th Cir.2004)(noting that the *Rooker/Feldman* "doctrine is jurisdictional, [and that] it may be raised sua sponte."), cert. denied, 543 U.S. 810, 125 S.Ct. 43, 160 L.Ed.2d 13 (2004), citing *Lemonds v. St. Louis County,* 222 F.3d 488, 492–93 (8th Cir.2000), cert. denied *sub nom., Halbman v. St. Louis County,* 531 U.S. 1183, 121 S.Ct. 1168, 148 L.Ed.2d 1026 (2001).

Here, there is no dispute that the Court, in *Johnson I,* raised the issue of subject matter jurisdiction *sua sponte.* See, *Johnson I, Docket No. 18,* at p. 5 n. 3, 2008 WL 2427434 at *2 n. 3 ("Though neither party raised the *Rooker–Feldman* doctrine in their briefs, this Court has an independent obligation to consider whether the doctrine applies."). Notwithstanding the Defendant's argument to the contrary, the Court's *sua sponte* examination of its subject matter jurisdiction did not deprive the Defendant of a full and fair opportunity to litigate the question. In *Bui v. IBP, Inc., supra* at 1185, the plaintiff's first action was dismissed for lack of subject matter jurisdiction. In the plaintiff's second action, the Court concluded that, even though the parties had not raised or briefed the issue of subject matter jurisdiction, the "plaintiff knew or should have known that a district court may, at any time, and without motion by a party, examine or reexamine the issue of its subject

matter jurisdiction." *Id.* at 1186, citing *Rule 12(h)(3), Federal Rules of Civil Procedure.* In addition, the Court determined that the plaintiff had been given a full and fair opportunity to litigate the issue, through post-Judgment Affidavits, and in his Motion to Amend or Alter the Judgment. *Id.* As a result, the Court held that collateral estoppel barred the plaintiff from relitigating the subject matter jurisdiction question. *Id.*

Here, the Defendant was, or should have been, fully aware of the Court's ability to examine its subject matter jurisdiction *sua sponte.* See, *Johnson v. United States,* 534 F.3d 958, 964 (8th Cir.2008)("Because 'there is no statutory procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.'"), quoting *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *McAdams v. McCord,* 533 F.3d 924, 927 (8th Cir.2008)(Federal Courts "will raise jurisdictional issues sua sponte when we believe we lack jurisdiction, even if the parties do not address the issue."), citing *Thomas v. Basham,* supra at 523. However, unlike the plaintiff in *Bui v. IBP, Inc.,* supra, the Defendant did not file a Motion to Amend or Alter the Judgment, even though the Defendant could have notified the District Court of its belief that the *Rooker/Feldman* doctrine was inapplicable, because there was no prior State Court Judgment.

Nor will the Defendant suffer any injustice from our conclusion. As previously noted, "[b]ecause the doctrine of collateral estoppel is flexibly applied, the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Jeffers v. Convoy,* supra at 1339. Here, the Defendant chose not to inform the Court, in *Johnson I,* that an error had been made as the foreclosure on the Plaintiffs' property, had not been obtained by recourse to the State Court, but

was by advertisement. We need not determine whether, in making that choice, the Defendant was being "too clever by half," or had made a tactical error, for the application of issue preclusion is not stymied by the fact that the prior Judgment may have been wrong. As the Supreme Court explained, in *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981):

> Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. *Angel v. Bullington,* 330 U.S. 183, 187, 67 S.Ct. 657, 659, 91 L.Ed. 832 (1947); *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Wilson's Executor v. Deen,* 121 U.S. 525, 534, 7 S.Ct. 1004, 1007, 30 L.Ed. 980 (1887).

See also, *Bear v. United States,* 810 F.2d 153, 157 (8th Cir.1987); *Price v. Viking Press, Inc.,* 654 F.Supp. 1038, 1041 n. 3 (D.Minn.1987).

In the words of the Court of Appeals for the District of Columbia Circuit, "[t]he appeal process is available to correct error; subsequent litigation is not." *Hardison v. Alexander,* 655 F.2d 1281, 1288 (D.C.Cir. 1981).

Any claimed injustice arises from the Defendant's elective choices, and not from the application of collateral estoppel. See, *Ossman v. Diana Corp.,* 825 F.Supp. 870, 879 (D.Minn.1993)(the Court found no unfairness in the application of collateral estoppel when the defendant was forced "to abide by consequences they knew might arise out of their prior tactical decisions," to settle with the plaintiff in the prior action instead of appealing the Court's ruling.); see also, *Continental Can Co., U.S.A. v. Marshall,* 603 F.2d 590, 596 (7th

Cir.1979)(finding that an issue was actually litigated for collateral estoppel purposes even when a party produces minimal evidence on the issue, because "[a]ny other result would permit a litigant to avoid the conclusive effect of collateral estoppel, by design or by inadvertence, by denoting as irrelevant an issue clearly raised by his opponent and by refusing to introduce evidence on the issue.").

The Defendant maintains that it did not seek a reconsideration of the Court's Order because the decision "appeared to give Defendant all or most of its desired relief." See, *Defendant's Supplemental Memorandum,* supra at 3–4 n. 1. Even if the Defendant's position seemed reasonable at that time, it does not change our conclusion that such an election foreclosed any argument that the Defendant did not receive a full and fair opportunity to be heard on the issue of subject matter jurisdiction. See, *Ossman v. Diana Corp.,* supra at 879; see also, *Continental Can Co., U.S.A. v. Marshall,* supra at 596. The Defendant had an opportunity to inform the Court of its position but, instead, chose to forfeit its right to be heard. Therefore, we find that the Defendant had a full and fair opportunity to litigate the issue of the Court's subject matter jurisdiction.

In sum, we find that collateral estoppel, that is, issue preclusion, bars the relitigation of this Court's subject matter jurisdiction to consider our authority to consider the merits of the Plaintiff's claim. Had the Defendant properly informed the Court, in *Johnson I,* that *Rooker/Feldman* did not apply because of the foreclosure by advertisement, the Defendant would have secured what it now seeks—a determination of the Plaintiff's claims in this Court. Having elected to follow the route it there chose, the Defendant must live with that decision, and therefore, we recommend that the Plaintiff's Motion be granted, and that this case be remanded to the Minnesota District Court for Clay County.

NOW, THEREFORE, It is—

RECOMMENDED:

That the Plaintiff's Motion for Remand [Docket No. 9] be granted.